**BROTHERHOOD RAILWAY CARMEN OF AMERICA, LODGE 886,**
Plaintiff,

v.

**The LONG ISLAND RAILROAD COMPANY and Metropolitan Commuter Transportation Authority, Defendants.**

**No. 67 Civ. 476.**

United States District Court
S. D. New York.
March 13, 1967.

Edward G. Dougherty, Peter M. J. Reilly, New York City, for plaintiff.

George M. Onken, by James T. Gallagher, Jamaica, N. Y., for defendants.

MOTLEY, District Judge.

Opinion on Motion to Dismiss, Findings of Fact and Conclusions of Law

This action is a sequel to The Long Railroad Co. v. System Federation No. 156, etc., et al., 368 F.2d 50 (2d Cir. Oct. 31, 1966). That action was brought by the Long Island Railroad Co. (the Railroad) a defendant in the instant action in the Eastern District of New York against Lodge 886 of the Brotherhood of Railway Carmen (the Brotherhood) plaintiff here and others.

There, the Railroad secured a preliminary injunction enjoining the Brotherhood from "causing any acts which effect an intended delay in the Railroad's scheduled rail service" until the Brotherhood complied with the provisions of the Railway Labor Act (the Act) and utilized its procedures. The injunction was affirmed by the Second Circuit. The *Long Island Railroad,* supra. That dispute arose out of an attempt by the Brotherhood to negotiate rule changes and wage increases (known as Section 6 proposals) which the Railroad insisted were barred under the existing contract until January 1, 1967.[1] Following this refusal to nego-

---

1. Under the Railway Labor Act (45 U.S.C. § 152; Seventh, § 156) a party desiring .

to negotiate changes in an existing contract regarding rates of pay, rules, or

tiate, the Brotherhood effected the delay in rail service which was enjoined. In granting that injunction, as the Second Circuit noted, the Eastern District had ruled that "future failure of the Railroad to perform its duties under the Act could lead to dissolution of the injunction." Id. at p. 53.

Thereafter, beginning June 6, 1966 the Railroad opened negotiations regarding changes in vacations despite the bar to such changes which it had previously pleaded. It also began informal discussions with the Brotherhood on its Section 6 proposals on July 5, 1966.[2] After this discussion, the Railroad again invoked the moratorium on such discussions until January 1, 1967. Subsequently, on August 1, 1966 the Railroad sent the Brotherhood a letter offering a 3.2% increase in wages at such time as the moratorium would expire. The Railroad also advised that if at the completion of negotiations a higher wage increase was agreed upon, the difference between the final amount and the offer then made would be adjusted on mutually agreeable terms. On August 5, 1966, the Brotherhood replied by letter that it would accept the Railroad's offer as a "down payment". On August 9, 1966, the Railroad sent the Brotherhood a letter telling it that further discussions of the wage offer would have to await replies from the other unions on the Railroad to which a similar wage offer had been made.

On August 12, 1966, the Brotherhood advised it would be willing to meet at any convenient time. On September 9, 1966, a meeting was held at which time the Railroad and the Brotherhood discussed the wage offer. The Brotherhood's international vice president was in attendance. No agreement was reached. Thereafter, on September 21, 1966, the Railroad transmitted to the Brotherhood its counter Section 6 proposals for discussion. On September 26, the Brotherhood wrote that it had reviewed the Railroad's counter-proposals. It asked that a mutually agreeable date be set for further conference.

Such a meeting was called for October 10, 1966. It was adjourned at the request of the Brotherhood until October 17, 1966, at which time the Railroad's counter-propsals were discussed. The Brotherhood's representative advised that the wage offer had to be voted upon by the membership. Another meeting was held on October 31, 1966, at which the authority of Mr. D'Avanzo, instead of the System Federation, to negotiate on major matters for the Brotherhood was discussed and later affirmed by the Brotherhood's national body.

On November 3, 1966, another meeting was held and discussion was had on some of the Brotherhood's demands. On December 15, 1966, the Railroad, at a meeting, increased its wage offer to a firm 5% and additional vacation benefits. The wage offer was a 5% increase each year for 3 years beginning January 1, 1967. Fringe benefits and other items were discussed. Some items were denied and counter-offers were made on others. The 5% wage increase was rejected by the Brotherhood's representative. Another meeting was set for December 27, 1966. On that date no agreement on wages was reached. The meeting was adjourned until January 4, 1967. On that date, a meeting was held but only

---

working conditions, must give at least 30 days notice in writing of such proposed changes. A contract negotiated in April 1965 between the parties here contained a moratorium on such Section 6 changes until January 1, 1967.

2. These proposals had been submitted by Mr. D'Avanzo, the Brotherhood's general chairman, who represented the Brotherhood in these negotiations with the Railroad on June 6, 1966. Similar demands or proposals had been submitted by Mr. D'Avanzo on April 5, 1966. The Railroad replied these proposals were premature under the moratorium. The Railroad also questioned Mr. D'Avanzo's authority to negotiate for the Brotherhood. The System Federation had been the bargaining agent in the past. The System Federation is a national body of which the Brotherhood is a member. The Brotherhood is only one of several locals of employees of the Railroad.

minor items unrelated to the negotiations were discussed. This was a regularly scheduled meeting on minor grievances. The Brotherhood's representative testified that on this date he requested the Railroad's representative to schedule another meeting.

On January 9, 1967, not having heard from the Railroad, the Brotherhood requested by letter another meeting on its Section 6 proposals. The Railroad's negotiator testified he never received this letter and consequently did not reply. On the same date, the Railroad by letter requested that the Brotherhood withdraw its pension demand. This suggestion was complied with, pending the outcome of national negotiations on this question. On January 25, 1967, the Brotherhood's membership authorized Mr. D'Avanzo to call a strike.

This suit was commenced on February 2, 1967, when the Brotherhood filed its complaint. An order to show cause, signed February 3, 1967, directed the Railroad and Metropolitan Commuter Transportation Authority (the Authority) to show cause on such hearing why an order should not be entered requiring defendants, under the provisions of the Act, to comply with the obligations imposed under the Act to bargain in good faith in an attempt to negotiate a new collective bargaining agreement between the parties. The moratorium on rules changes and wage increases had expired December 31, 1966.

Defendants' motion to dismiss the complaint was heard on February 7, 1967, and granted on February 8, 1967, as to the Authority but denied as to the Railroad.

The motion to dismiss the complaint urged several grounds: 1) lack of jurisdiction over the subject matter, 2) failure to state a claim against defendants upon which relief could be granted, 3) the Authority was improperly joined as a party defendant, 4) lack of requisite jurisdictional amount, 5) controversy not between citizens of different states, 6) controversy within exclusive jurisdiction of the National Mediation Board created

and acting pursuant to provisions of the Act, 7) plaintiff has not exhausted its remedies under the Act and, 8) plaintiff has an adequate remedy at law.

The complaint predicated jurisdiction on Title 28 U.S.C. §§ 1331 (federal question and $10,000) and 1337, (act of Congress regulating commerce, i. e., 45 U.S.C. § 151 et seq., Railway Labor Act and 49 U.S.C. § 1 et seq., Interstate Commerce Act). The gravamen of the complaint is that since December 1966 the Railroad "has not indicated any desire to sit down and negotiate a new contract" with the Brotherhood and its bargaining representative, Mr. Anthony D'Avanzo.

The only allegations made as to the Authority are that: 1) it is an authority created under the laws of the State of New York, 2) it owns all the capital stock of the Railroad, and 3) "either or both of the two defendants have not followed the procedures provided for by the Railway Labor Act to prevent the interruption of operation" of the Railroad.

The affidavit of Howard J. Bellis, filed in support of the motion to dismiss, avers that he, as Director of Personnel of the Railroad, has charge of and is authorized to negotiate contracts with the Railroad's employees and has been engaged in such negotiations with plaintiff's representative. It further appears that the Authority is a public benefit corporation of the State of New York, whose purposes are the continuance, further development and improvement of commuter transportation and other services related thereto within the New York Metropolitan area. Chapter 324 and 634, Laws of New York 1965, as amended by Chapter 415, Laws of 1966, Public Authorities Law, McKinney's Consol.Laws, c. 43–A, § 1260 et seq. The Authority is the sole stockholder of the Railroad. The affidavit of defendant's counsel, also filed in support of the motion to dismiss, alleges that the Railroad was acquired by the Authority on January 20, 1966, by purchase from the former owner, the Pennsylvania Railroad on January 20, 1966. The affidavit further alleges that the Railroad is a wholly owned subsidi-

ary corporation of the Authority. It also alleges that the stockholders of the Railroad elected the Board of Directors of the Railroad and designated its Director of Personnel to negotiate for the Railroad. The affidavit finally alleges that the Authority has not been designated under the Act to serve as the representative of the Railroad as required by the Act. 45 U.S.C. § 152, Third.

■ As to the Authority, the motion asks that it be dismissed under the provisions of Rule 20, Fed.R.Civ.P., since it is neither a necessary nor proper party. It appears that the Authority is not a necessary party to this action for an injunction and, consequently, may be dismissed. For this reason the Authority was dismissed by this court following argument on the motion. cf. United States v. Atkins, 323 F.2d 733 (5th Cir. 1963); Rule 20, Fed.R.Civ.P.

■ This court concluded, after hearing argument on the motion to dismiss, that it has jurisdiction of this cause. The Eastern District, in The Long Island Railroad v. System Federation No. 156, (66 Civ. 109) (E.D.N.Y. March 3, 1966) took jurisdiction of the Railroad's suit to compel compliance with the Act by the Brotherhood when the Brotherhood resorted to self help before exhausting the procedures under the Act. After finding that the Railroad had complied in good faith with its duties under the Act, the Eastern District enjoined the Brotherhood from resorting to self help before it complied with the Act. Here we have the reverse situation. The Brotherhood alleged in its complaint that this time the Railroad refuses to comply with the Act. An injunction is sought to compel compliance by the Railroad. The law is that injunctions may issue to force compliance with the Act, but there must also have been good faith compliance by the one seeking the injunction. Ruby v. American Airlines, Inc., 329 F. 2d 11, 20–22, (2nd Cir. 1964), cert. granted, sub nom. American Airlines v. Manning, 379 U.S. 912, 85 S.Ct. 264, 13 L.Ed. 2d 184 (1964) vacated, sub nom. O'Connell v. Manning, 381 U.S. 277, 85 S.Ct.

1456, 14 L.Ed.2d 430 (1965); Rutland Ry. v. Brotherhood of Locomotive Engineers, 307 F.2d 21 (2nd Cir. 1962), cert. denied, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963).

In this action the claim is that the Railroad refuses to comply with the Act in that, "Since some time in December 1966 the Railroad has not indicated any desire to sit down and negotiate a new contract with * * * the Brotherhood * * *" (Complaint, para. Ninth). The permanent relief prayed for in the complaint is that the Railroad be ordered to "observe the Railway Labor Act and sit down in continual negotiations in order that a contract may be reached." The present application for preliminary injunction is not as questionable as the final relief sought. The relief requested by the motion for preliminary injunction is an order requiring the Railroad "to comply with the obligations imposed under the Act to bargain in good faith relative to negotiating a new collective bargaining agreement between the parties herein." The application goes on to aver that, "in the absence of negotiating (sic) leading to a new contract, a strike action may be anticipated which will cause an irreparable loss and damages to the parties herein and to the public generally."

The Act requires as a first step that the Railroad and the Brotherhood attempt by good faith "conferences" to reach a new agreement without the intervention of government. See, Rutland supra; American Airlines, Inc. v. Air Line Pilots, etc., 169 F.Supp. 777 (S.D. N.Y.1958). The requirement is that the parties "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, * * in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof." Ibid. 45 U.S.C. § 152, First.

■ After the first step has been taken, in the case of a major dispute such as is here involved, the Act sets up step by

step negotiating machinery which the parties are required to exhaust but which may not result in any final or binding determination. The parties are under no compulsion to reach agreement at any point. See, *Rutland*, supra.

When a party, subject to the Act, desires to make any major change in the status quo, it must give at least 30 days written notice. 45 U.S.C. §§ 152, Seventh; 156. This was done here by the Brotherhood. Thereafter, it is the duty of both parties to confer. The Act directs that the time and place for the beginning of conference "shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice." Id. 156.

■ If the conferences fail, either party may then invoke the next step—the services of the Mediation Board.[3] It is the first step, initial conferences, that the Brotherhood contends must be complied with before either party may resort to the Mediation Board. The Railroad disagrees and contended on this hearing that the first step may be disregarded by either party and the Mediation Board brought in *ab initio*. This court agrees with the position of the Brotherhood. That position is clearly supported by the authorities. *Ruby*, supra; *Rutland*, supra.[4] This court, consequently, took jurisdiction of this action and held a hearing on the Brotherhood's motion for preliminary injunction on February 10 and 11. At the hearing, it appeared that both sides were willing to resume discussions which had ended December 27, 1966. These conferences had not been resumed after the January 4, 1967 meeting on minor unrelated issues because the Railroad had never received the Brotherhood's letter requesting further conferences.

■ The court thereupon continued the hearing for two weeks to give the Railroad additional opportunity to confer and to further demonstrate its good faith compliance with the first step under the Act before invoking the aid of government.

The court directed the Railroad to file immediately a schedule of proposed meetings with the Brotherhood over the two week period. This direction was promptly complied with by the Railroad.

Thereafter, the parties had five meetings (the schedule called for six) lasting about 2½ hours each on February 15, 17, 20, 24 and 27.

The hearing was resumed on February 28, 1967. At this hearing, the court became convinced that the Railroad had complied with the Act by conferring with the Brotherhood. However, there is an impasse. This impasse is over an increase in the wage paid carmen who make up the membership of the Brotherhood. The Brotherhood's strike bound position is that these workers should be paid the same wage which the New York City Transit Authority pays workers doing the same work on the City's subways. The lowest paid carmen, the coach cleaners, make $83.00 per week gross. The lowest paid subway worker doing similar work makes $120.00 per week gross. The present wage offer of the Railroad is 5% each year for the next three years. The parties are far apart. In the meetings held since July 5, 1966, all demands of the Brotherhood have been discussed. One or two of these demands have been accepted. The remaining demands are dependent, the Railroad says, on the agreement finally reached as to wages. In view of the Brotherhood's position concerning wages, which position it has a perfect right to take, it seems clear to this court that what we have is an honest disagreement about wages. Consequently, the court cannot say that the Railroad has failed to comply with the first step contemplated by the Act.

■ The Brotherhood's sketchily articulated position is that resort to the

3. 45 U.S.C. § 155.

4. This court does not believe the question here decided was before the district court in the *Long Island Railroad* case, supra.

Mediation Board and other procedures provided by the Act serve only the ends of a recalcitrant employer—a cooling off period of intolerable duration—and that the employer here is anxious to invoke these procedures to avoid its statutory duty to negotiate until a new contract is reached, citing Virginia Ry. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1957). However, the duty imposed under the Act as to the first step after service of a Section 6 notice is a duty to confer, not negotiate until agreement is reached. cf. *Rutland* supra. It may very well be true that the Railroad here is rushing to invoke the services of the Mediation Board to avoid its duty to confer, but the Brotherhood failed to carry its burden of proof with respect to same in this case. Moreover, the Brotherhood makes an argument which should be addressed to the Congress when it complains that the procedures set up under the Act have proved to be a refuge for bad faith employers.

There was some proof that the Railroad in 1965, when the present contract was negotiated with the then representatives of the Brotherhood, acted in collusion with those representatives to deprive entry level carmen of a previously won wage floor. The Railroad's present wage offer includes a proposed adjustment of this inequity. There was also evidence that the Railroad may have illegally aided a Brotherhood election campaign in an attempt to defeat Mr. D'Avanzo who subsequently became General Chairman of the Brotherhood. There was proof the Railroad at first refused to deal with Mr. D'Avanzo but did so after Mr. D'Avanzo's authority to act independently of the System Federation was affirmed. During the two week period afforded by the court for further conferences, the Railroad increased the total value of its offers. The Brotherhood decreased the total monetary value of its demands. The parties are still far apart monetarily. No proof of the Railroad's present economic ability was offered.

■ Both parties are now free to invoke the procedures under the Act. In fact, the law now requires it. After all procedures provided for by the Act have been exhausted and the dispute remains unresolved, either party may invoke self help. *Rutland,* supra; *American Airlines, Inc.,* supra.

■ The Brotherhood having failed to carry its burden of proof of non-compliance with the Act, the application for preliminary injunction must be denied.